UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| MICHAEL SHEETS, | ) |
| | ) |
| Plaintiff, | )  Case No. 1:05-cv-632 |
| | ) |
| v. | )  Honorable Robert Holmes Bell |
| | ) |
| KAREN LOVE, | ) |
| | ) |
| Defendant. | ) |

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff shall pay the initial partial filing fee when funds are available. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Keener*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

    I.        Factual Allegations

Plaintiff is presently incarcerated at the Muskegon Correctional Facility. In his *pro se* complaint, Plaintiff sues Resident Unit Manager Karen Love for refusing to allow him to possess the March 2005 issue of Reader's Digest, in violation of the Michigan Constitution and his First, Fifth and Fourteenth Amendment rights, because it contains an article on how to commit identity theft/fraud.

On February 18, 2005, Plaintiff received a Michigan Department of Corrections (MDOC) Notice of Package/Mail Rejection (Notice of Mail Rejection) for the March 2005 issue of Reader's Digest. The Notice of Mail Rejection stated that the article on identity theft in the magazine violates MICH. DEP'T. OF CORR., Policy Directive 05.03.118, ¶ D (effective Dec. 19, 2003), *amended* June 6, 2005. Plaintiff, however, claims that the Notice of Mail Rejection did not comply with Policy Directive 05.03.118, ¶ JJ because it did not specify why the mail was rejected.

Although Plaintiff requested an administrative hearing on the rejected magazine, he claims that Defendant Love did not permit him to attend the hearing[1] or to review the rejected magazine at the hearing in accordance with Policy Directive 05.03.118, ¶ LL. Defendant Love held the hearing on February 18, 2005. In her Administrative Hearing Report, Defendant Love stated that the magazine violated Policy Directive 05.03.118, ¶ D, and ordered the magazine to be returned or disposed of within fifteen days. Plaintiff argues that the Administrative Hearing Report is deficient

---

[1]There is a discrepancy as to whether Plaintiff attended the hearing. Mark Malone, an assistant deputy, documented in his Step I response to Plaintiff's grievance that Plaintiff participated in the hearing. (Compl., Ex. F).

because it should have indicated why Plaintiff was not allowed to review the rejected mail as required under Policy Directive 05.03.118, ¶ LL.

In his Step I response to Plaintiff's grievance, Mark Malone, assistant deputy, noted that the article violates Policy Directive 05.03.118 because it encourages criminal activity. (Compl., Ex. F). Plaintiff argues that if the article promotes criminal activity, then law enforcement officials should have been contacted immediately. *See* MICH. DEP'T. OF CORR., Policy Directive 05.03.118, ¶ F. Plaintiff exhausted his claims through Step III of the grievance process (MCF 05-02-00150-07B).

Plaintiff requests declaratory and injunctive relief as well as compensatory and punitive damages.

II.     Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff asserts violations of his constitutional rights arising from the rejection of his March 2005 issue of Reader's Digest. Under MDOC policy, a prisoner may send and receive

uncensored mail from any person or organization unless the mail violates policy or an administrative rule. MICH. DEP'T OF CORR., Policy Directive 05.03.118, ¶ D. Mail cannot be prohibited solely because its content is "religious, philosophical, political, social, sexual, unpopular or repugnant." *Id.* However, mail can be prohibited if it is a "threat to the security, good, order, or discipline of the facility, may facilitate or encourage criminal activity, or may interfere with rehabilitation." *Id.* Certain types of incoming mail, which are listed in the policy directive, are deemed to pose these risks under all circumstances. MICH. DEP'T OF CORR., Policy Directive 05.03.118, ¶ HH. For example, the list includes mail encouraging or providing instruction in the commission of a criminal activity. *Id.,* ¶ HH(11). Even though Policy Directive 05.03.118 does not contain a provision specifically rejecting materials on identity theft, the article falls within the category of mail that may encourage or provide instruction in the commission of a criminal activity, i.e. identity theft.

Although there is no question that the First Amendment applies to a prisoner's receipt of incoming mail, the right is subject to limitation by legitimate penological interests. *Sheets v. Moore*, 97 F.3d 164, 166 (6th Cir. 1996); *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992). The Supreme Court has held that prison regulations (similar to those in Michigan) allowing a warden to reject any publication for good reason pursuant to specific criteria did not violate the First Amendment because the regulations were reasonably related to legitimate penological interests. *Thornburgh v. Abbot*, 490 U.S. 401, 413 (1989). In *Thornburgh*, the Court specifically considered materials with sexual content. Nevertheless, the Court approved regulations that contained a non-exhaustive list of criteria to support the rejection of a publication; this list included material that "encourages or instructs in the commission of criminal activity . . . ." *Id*. at 405 n.6.

Emphasizing the extreme deference accorded to prison officials, the Supreme Court stated:

> We deal here with incoming publications, material requested by an individual inmate but targeted to a general audience. Once in the prison, material of this kind reasonably may be expected to circulate among prisoners, with the concomitant potential for coordinated disruptive conduct. Furthermore, prisoners may observe particular material in the possession of a fellow prisoner, draw inferences about their fellow's beliefs, sexual orientation, or gang affiliations from that material, and cause disorder by acting accordingly. As the Deputy Solicitor General noted at oral argument: "The problem is not. . . in the individual reading the material in most cases. The problem is in the material getting into the prison." In the volatile prison environment, it is essential that prison officials be given broad discretion to prevent such disorder.

*Thornburg*, 490 U.S. at 412-13 (citations omitted). The Court applied four factors relevant to the inquiry whether the restriction is reasonably related to legitimate penological interests: (1) whether there is a valid rational connection between the regulation and the legitimate governmental interest which it allegedly furthers, (2) whether there are alternative means by which the inmate may exercise the right impinged, (3) what impact the accommodation of the inmate's constitutional right will have on guards, other inmates, or the allocation of prison resources generally, and (4) the existence or absence of ready alternatives to the regulation in question. *Turner v. Safley*, 482 U.S. 78, 88-91 (1987) (cited in *Thornburgh*, 490 U.S. at 414-18).

Under prison policy, a prisoner may not receive materials "encouraging or providing instruction in the commission of criminal activity." MICH. DEP'T OF CORR., Policy Directive 05.03.118, ¶ HH(11). The exclusion of the foregoing materials is based upon the Michigan Department of Corrections' conclusion that mail is prohibited if it is a "threat to the security, good order, or discipline of the facility, may facilitate or encourage criminal activity, or may interfere with

the rehabilitation of the prisoner." MICH. DEP'T OF CORR., Policy Directive 05.03.118, ¶ D. An article on how to commit identity theft/fraud goes to the heart of the MDOC's concern that mail may facilitate or encourage criminal activity. Identity theft/fraud has become a pervasive problem in the United States. Preventing an article on how to commit identity theft/fraud from entering the prison environment is patently within the reasonably legitimate penological objectives of the prison officials. Therefore, Defendant Love did not violate Plaintiff's First Amendment right by preventing him from receiving material that encourages criminal behavior. Accordingly, Plaintiff's First Amendment claim must fail.

Plaintiff also agues that the administrative proceedings concerning his rejected magazine violated his due process rights under the Fifth and Fourteenth Amendments. Plaintiff alleges that (1) the Notice of Mail Rejection did not comply with Policy Directive 05.03.118, ¶ JJ, (2) Defendant Love conducted the administrative hearing without Plaintiff present, and (3) Defendant Love did not allow him to review the rejected material in violation of Policy Directive 05.03.118, ¶ LL. These due process claims merit little discussion. Plaintiff does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Sweeton v. Brown*, 27 F.3d 1162, 1164 (6th Cir. 1994). Therefore, Defendant Love's alleged failure to comply with MDOC policy directives or administrative rules does not itself rise to the level of a constitutional violation. *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687 at *1 (6th Cir. April 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest).

Moreover, it is clear that Plaintiff received adequate due process of law. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. Due process generally requires notice and a hearing prior to the deprivation of property. *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). Where a pre-deprivation hearing is impractical, a post-deprivation hearing may be constitutionally adequate. *Id.* at 128. In this case, Plaintiff received all of the process he was due. Plaintiff was notified of the rejection via the Notice of Mail Rejection and Defendant Love held an administrative hearing pursuant to his request. Thus, Plaintiff had adequate post-deprivation remedies. *See Wilson v. Beebe*, 770 F.2d 578, 584 (6th Cir. 1985) (en banc). Additionally, a pre-deprivation hearing would have been impractical because of the prison's legitimate penological need to seize contraband immediately upon discovery. *See Pearce v. Sapp*, No. 97-6373, 1999 WL 503568, at *2 (6th Cir. July 9, 1999). The Due Process clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in "life, liberty or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon*, 494 U.S. at 125 (emphasis in original). Therefore, regardless of the correctness of the decision, the process Plaintiff received was adequate under the Constitution.

Finally, Plaintiff argues that Defendant Love violated his rights under the Michigan Constitution. Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton*, 27 F.3d at 1166. To the extent that Plaintiff's

complaint presents allegations under state law, this court declines to exercise jurisdiction. The Sixth Circuit has stated that district courts should generally decline to exercise supplemental jurisdiction over state law claims under these circumstances. *See Landefeld v. Marion General Hosp.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *Hawley v. Burke*, No. 97-1853, 1998 WL 384557, at *1-2 (6th Cir. June 18, 1998). This claim will be dismissed.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action fails to state a claim and will therefore be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $255 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $255 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Date:   October 11, 2005            /s/ Robert Holmes Bell
                                    ROBERT HOLMES BELL
                                    CHIEF UNITED STATES DISTRICT  JUDGE